IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

WILLIAM L.,

      **Plaintiff,**

v.                                **Case No.: 2:22-cv-00543**

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,

      **Defendant.**

PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are Plaintiff's Brief in support of his complaint and the Commissioner's Brief in Support of Defendant's Decision, each seeking judgment on the pleadings in his or her respective favor. (ECF Nos. 13, 14).

For the following reasons, the undersigned **RECOMMENDS** that the Court **GRANT** Plaintiff's motion for judgment on the pleadings to the extent that it requests

remand of the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g); **DENY** Defendant's request to affirm the decision of the Commissioner; **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; and **DISMISS** this case, **with prejudice**, and remove it from the docket of the Court.

## I.   Procedural History

In February and July 2019, William L. ("Claimant") protectively filed for DIB and SSI, respectively, alleging a disability onset date of September 22, 2016 due to "stroke residuals, unstable balance, hearing loss, migraines, anxiety, depression, right-sided weakness from stroke, sleep apnea with CPAP, cervical spondylosis, and COPD." (Tr. at 150, 390-411, 434). After his applications were denied at the initial and reconsideration levels of review, Claimant requested an administrative hearing, which was held before the Honorable Sabrina M. Tilley, Administrative Law Judge (the "ALJ"), on December 9, 2020. (Tr. at 62-87). By written decision dated February 2, 2021, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 147-66).

On March 8, 2021, the Appeals Council granted Claimant's request for review and remanded the case to the ALJ for further consideration of Claimant's RFC and use of a cane. (Tr. at 168). Claimant amended his alleged onset date to January 18, 2019.[1] (Tr. at 430). Following remand, the ALJ held another administrative hearing on November 5, 2021. (Tr. at 54-61). After obtaining medical expert interrogatories on the issue of Claimant's cane usage, the parties reconvened for an additional administrative hearing on April 13, 2022. (Tr. at 41-53). By written decision dated June 1, 2022, the ALJ found

---

[1] Claimant was previously deemed disabled for the period of September 22, 2016 through August 3, 2018 by decision dated January 17, 2019. (Tr. at 102). The amended alleged onset date begins on the day after the partially favorable decision on Claimant's prior DIB and SSI applications. (Tr. at 59).

that Claimant was not disabled as defined by the Social Security Act. (Tr. at 12-40). The ALJ's decision became the final decision of the Commissioner on October 12, 2022 when the Appeals Council denied Claimant's request for review. (Tr. 1-6).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed a Transcript of the Administrative Proceedings. (ECF No. 8). Claimant filed a Brief in support of his complaint and the Commissioner filed a brief in support of her decision to which Claimant filed a reply. (ECF Nos. 13, 14, 15). Thus, the matter is ripe for resolution.

## II.   **Claimant's Background**

Claimant was 47 years old on his amended alleged onset date and 50 years old on the date of the ALJ's decision. (Tr. at 29). He communicates in English, has a ninth-grade education, and previously worked as a garbage collector. (Tr. at 29, 48, 433, 435).

## III.   **Summary of ALJ's Decision**

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of

whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d. 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review

performed by the ALJ. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b), 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* §§ 404.1520a(d), 416.920a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The

decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for DIB through December 31, 2023. (Tr. at 18, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since January 18, 2019, the amended alleged disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: degenerative disc disease (DDD) of the cervical spine with history of anterior cervical discectomy and fusion, cervical stenosis, cervical radiculopathy, diabetes mellitus, residuals of stroke in 2016, obesity, anxiety disorder, and depressive disorder. (*Id.*, Finding No. 3). The ALJ also considered Claimant's migraines, hypertension, obstructive sleep apnea, and sudden right ear hearing loss, but found that the impairments were non-severe. (Tr. at 18-19).

Under the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 19-22, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[.] He can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit for 1 hour at a time for a total of 6 hours in an 8-hour day. He can stand 30 minutes at a time for a total of 3 hours in an 8-hour day and walk 15 minutes at a time for a total of 2 hours in an 8-hour day. He requires the use of a cane to balance and walk. He can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; never balance; occasionally stoop and kneel; never crouch; and occasionally crawl. He can occasionally reach overhead and frequently reach in all other directions, can frequently push and pull with both upper extremities, and can never use foot controls. He can tolerate occasional exposure to extreme temperatures, vibration, fumes, odors, dusts, gases,

6

and poor ventilation; and can have no exposure to loud noises or hazards. He retains the capacity to understand, remember, and carry out simple, routine, and repetitive tasks; can respond appropriately to interactions with coworkers and supervisors but should have no interaction with the general public. There can be no fast-paced production requirements; [t]here must be few, if any, work related decisions. The claimant can adjust to usual work situations and occasional changes in the routine work setting.

(Tr. at 23-28, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could not perform his past relevant work. (Tr. at 28-29, Finding No. 6). Therefore, the ALJ reviewed Claimant's prior work experience, age, and education in combination with his RFC to determine his ability to engage in other substantial gainful activity. (Tr. at 29-30, Findings 7 through 10). The ALJ considered that (1) Claimant was born in 1971 and was defined as a younger individual on the amended alleged disability onset date, but he subsequently changed age category to closely approaching advanced age; (2) Claimant had a limited education; and (3) transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that Claimant was "not disabled," regardless of his transferable job skills. (Tr. at 29, Findings 7 through 9). Taking into account these factors, Claimant's RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that Claimant could perform other jobs that existed in significant numbers in the national economy, including unskilled work as a garment sorter, laundry sorter, or hospital plastics assembler at the light exertional level or laminator, inspector, or polisher at the sedentary exertional level. (Tr. at 29-30, Finding No. 10). Thus, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 30-31, Finding No. 11).

## IV.   **Claimant's Challenges to the Commissioner's Decision**

Claimant raises two challenges to the Commissioner's decision. (ECF No. 13 at 1).

First, Claimant argues that the ALJ's RFC analysis is deficient because the ALJ found certain opinion evidence persuasive, but she assessed less restrictive RFC limitations without explaining her reasoning. (*Id.* at 1, 7-10). Second, Claimant contends that the ALJ's credibility analysis is flawed because she did not consider Claimant's "stellar work history." (*Id.* at 1, 11). In response to Claimant's challenges, the Commissioner asserts that substantial evidence supports the ALJ's RFC evaluation, including her analysis of the opinion evidence, and the ALJ was not required to afford greater credence to Claimant's subjective complaints simply based on his work history. (ECF No. 14 at 11-18). Claimant filed a reply to the Commissioner's response reiterating that the ALJ did not explain the RFC limitations which greatly affected the step five finding. (ECF No. 15 at 1-6).

## V.    <u>Relevant Evidence</u>

The undersigned has reviewed all of the evidence before the Court. The following evidence is most relevant to the issues in dispute.

### *A. Treatment Records*

On March 16, 2018, Claimant presented to neurosurgeon, Houman Khosrovi, M.D., complaining that his arms tingled from his elbows to his hands for the past one to two months, and he was dropping objects. (Tr. at 609). Dr. Khosrovi's clinical notes reflected that Claimant was left-handed, married, retired from his job as a garbage collector, and he ambulated using a cane. (Tr. at 609-10). Claimant's medical history included a stroke in 2016, asthma, depression, type 2 diabetes, gastroesophageal reflux disease (GERD), hyperlipidemia, hypertension, obstructive sleep apnea, and weight gain. (Tr. at 609). His MRI showed significant cervical pathology for which Dr. Khosrovi recommended surgery. (*Id.*). On May 3, 2018, Dr. Khosrovi performed a C5-6 anterior cervical discectomy and fusion with plating. (Tr. at 609).

On January 22, 2019, Claimant followed up with his primary care provider, John Connor, II, D.O., for depressive disorder following his stroke. (Tr. at 570). He reported that he was taking his medications as prescribed, but had worsening mood. (*Id.*). Dr. Connor observed Claimant's depressed mood on examination and added Wellbutrin to his medication regimen. (Tr. at 571-72). Claimant's mental status examination findings were otherwise normal. (Tr. at 571).

On May 10, 2019, during his one-year post-operative appointment, Claimant reported 75 to 100 percent improvement in his pain and quality of life since his neck surgery. (Tr. at 800). He had normal spinal range of motion, upper extremity strength, muscle tone, and movements. (Tr. at 803). Claimant's sensation was intact to light touch in all extremities, but he had trace reflexes and still ambulated with a cane. (*Id.*).

Claimant followed up with Dr. Connor on November 15, 2019. His mood was fairly well controlled on medication. (Tr. at 840). Claimant attributed his depression to his stroke in 2016 causing his loss of employment. (*Id.*). On examination, Claimant had normal mood, affect, and behavior, but Dr. Connor noted a sensory deficit. (Tr. at 843). On March 18, 2021, Claimant told Dr. Connor that his mood was improving. (Tr. at 935). His mental status examination findings were normal. (Tr. at 939).

On July 19, 2021, Dr. Connor recorded that Claimant's depression was well controlled. (Tr. at 963). Claimant was working on losing weight, which was helping his mood. (*Id.*). He reported intermittent hand numbness that was worse when he allowed his arms to hang. (Tr. at 963). Dr. Connor documented normal neurological and psychiatric findings on examination. (Tr. at 967).

### B. *Evaluations, Prior Administrative Findings, and Opinions*

On March 27, 2019, Stephen Nutter, M.D., performed an internal medicine

examination of Claimant. He noted that Claimant had a past medical history of arthroscopic shoulder surgeries in 2014 and 2015 and a stroke in 2016. (Tr. at 685-86). Claimant stated that, since his stroke, he suffered from numbness in his hands; dizziness when getting up and moving around; dropping things with his right hand; and some weakness in his right leg, which occasionally made him stumble and fall. (Tr. at 685). Claimant's muscle strength and sensation were preserved in all extremities, but Dr. Nutter observed that Claimant ambulated with a cane and had some difficulty standing without the cane, especially when doing range of motion testing. (Tr. at 687-88). On April 4, 2019, psychologist Amy Guthrie, M.A., performed a mental status examination of Claimant. The findings were mostly unremarkable other than Claimant's mildly depressed mood, mildly slow movements, and impaired recent memory. (Tr. at 698-99).

On April 10, 2019, state agency physician, Saima Noon, M.D., assessed that Claimant could perform light exertional work that included occasional postural activities except for never climbing ladders, ropes, or scaffolds and no concentrated exposure to extreme cold, vibration, or hazards. (Tr. at 125-26). On April 24, 2019, Karl G. Hursey, Ph.D., performed a psychiatric review technique, concluding that Claimant was moderately limited in understanding, remembering, and applying information and mildly limited in the other paragraph B criteria. (Tr. at 122). He assessed that Claimant had the mental RFC to perform simple, routine, repetitive, familiar tasks; remember locations and simple task procedures; and understand, recall, and carry out instructions with one to two steps; but Claimant would need additional repetition/rehearsal to acquire new skills or procedures. (Tr. at 127). Isidro Amigo, M.D., and Philip E. Comer, Ph.D., affirmed the physical and mental prior administrative findings on June 27 and 28, 2019, respectively. (Tr. at 138-39, 141-44).

On November 28, 2021, Michael D. Buckwalter, M.D., completed medical interrogatories submitted to him by the ALJ. Dr. Buckwalter opined that Claimant could frequently lift up to 10 pounds and occasionally lift up to 20 pounds, but he could only carry up to 10 pounds occasionally and never carry 10 pounds or more; sit for 1 hour at a time for a total of 6 hours in an 8-hour day; stand 30 minutes at a time for a total of 3 hours in an 8-hour day; walk 15 minutes at a time for a total of 2 hours in an 8-hour day; occasionally climb ramps and stairs, stoop, kneel, crawl, and reach overhead; frequently reach in all other directions, push, and pull; continuously handle, finger, and feel; never climb ladders, ropes, or scaffolds, balance, crouch or use foot controls; occasionally tolerate exposure to moving mechanical parts and vibrations, but no exposure to unprotected heights or dusts, odors, or pulmonary irritants unless the area was ventilated in which case it was "ok." (Tr. at 1046). Dr. Buckwalter further opined that Claimant's use of a cane was medically necessary for balance due to the residual effects of his stroke. (Tr. at 1047).

### C. *Claimant's Testimony*

Claimant testified during his administrative hearing on December 9, 2020 that he suffered from weakness on his right side from his stroke, and he had to walk with a cane. (Tr. at 67). He also reported significant neck pain and difficulty looking to the side, primarily the right side. (Tr. at 69). Claimant stated that if he turned his head too quickly, he became dizzy and fell. (Tr. at 71). The neck pain averaged 5 to 6 on a 10-point scale and radiated down his arms causing numbness and tingling fingertips, which sometimes made it hard for him to feel things. (*Id.* at 69). Claimant did not believe that he could lift 20 pounds because he could no longer even lift his cat. (Tr. at 72). He testified that he had bone spurs removed from his shoulders in 2014 and 2015, but it did not relieve his hand

numbness. (Tr. at 77, 79). Claimant expressed that he had problems with his memory and concentration since his stroke. (Tr. at 74-75, 77). During a subsequent hearing on April 13, 2020, Claimant testified that he had the same symptoms he described in his earlier testimony. (Tr. at 45).

### D. Prior ALJ's Decision

On January 17, 2019, the Honorable Nathan Brown, Administrative Law Judge (the "prior ALJ"), determined that Claimant was disabled from September 22, 2016 through August 3, 2018. (Tr. at 102). During that period, Claimant could perform a range of sedentary work, could not perform any past relevant work, and had no transferable skills. (Tr. at 98, 101). There were no other jobs that existed in significant numbers in the national economy that Claimant could perform. (Tr. at 101). The prior ALJ concluded that Claimant medically improved on August 4, 2018, and had the RFC to perform a range of light work, including carrying 20 pounds occasionally. (Tr. at 104-05). Finding that Claimant could perform other work that existed in the national economy, the prior ALJ concluded that Claimant was not disabled from August 4, 2018 through the date of the decision. (Tr. at 107).

## VI.   Standard of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to

> justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to ensuring that the ALJ followed applicable Regulations and Rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.  <u>Discussion</u>

As discussed below, Claimant asserts that the ALJ's evaluation of his RFC and subjective symptoms are not supported by substantial evidence.

### A.  *RFC*

Claimant first challenges the RFC assessment on the basis that the ALJ found Dr. Buckwalter's medical opinion and the psychologists' prior administrative findings persuasive, but she assessed less restrictive RFC limitations without explaining her reasoning. SSR 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the **most** that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do

past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id.* According to the Ruling, the ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3.

The functions which the ALJ must assess include a claimant's physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); mental abilities, such as understanding, remembering, and carrying out instructions and responding appropriately to supervision, coworkers, and work pressures in a work setting; and other abilities, such as seeing and hearing. 20 CFR §§ 404.1545(b)-(d), 416.945(b)-(d).

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4. In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case

record were considered and resolved." *Id.* at *7.

While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

As to the evidence that the ALJ must consider in assessing Claimant's RFC, the ALJ is not required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings. 20 C.F.R. §§ 404.1520c(a); 416.920c(a). However, the ALJ is required to evaluate the persuasiveness of the medical opinions and prior administrative findings based upon the regulatory factors, including supportability; consistency; relationship of the source to the claimant; length, purpose, and extent of treatment relationship; frequency of examinations; whether the source examined the claimant; the source's specialization; and other factors. *Id.* at §§ 404.1520c(c), 416.920c(c). The ALJ must articulate his or her consideration of the factors of supportability and consistency, but the ALJ is not required to explain how he or she considered the other regulatory factors. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).

The term "supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). Furthermore, the law explains that "[t]he more

consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s)" are. *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Here, the ALJ considered the state agency psychologists' prior administrative findings concerning Claimant's mental functional abilities and Dr. Buckwalter's medical opinion regarding Claimant's physical abilities, and the ALJ explicitly found the evidence persuasive. (Tr. at 27, 28). She acknowledged that the psychologists assessed that Claimant could understand, recall, and carry out instructions with one to two steps and Dr. Buckwalter opined that Claimant could carry up to 10 pounds occasionally with the hand that he was not using for his cane. (*Id.*). However, the ALJ did not provide insight into why she did not include those limitations in Claimant's RFC. While it was undoubtedly the ALJ's role to assess Claimant's RFC, and she was not required to base her conclusions on a specific medical opinion or prior administrative finding, the ALJ was obligated to explain the basis for the limitations that she assessed and reconcile any conflicting information to allow for meaningful review of the decision. She did not so in this case.

The Commissioner provides various *post hoc* rationale for the ALJ's decision, asserting that the ALJ found portions of Dr. Buckwalter and the psychologists' findings persuasive, but assessed some different limitations based on the evidence. (ECF No. 14 at 14-16). According to the Commissioner, the decision as a whole explains the ALJ's reasoning for the physical and mental limitations. (*Id.* at 14). Yet, the ALJ never articulated any of the explanation that the Commissioner offers the Court. It is not possible to discern the ALJ's reasoning without piecing together her analysis and

speculating regarding her findings. As the Fourth Circuit clearly expressed, "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22, 2019). "The second component, the ALJ's logical explanation, is just as important as the other two." *Id*. The ALJ did not perform a functional analysis to connect her summary of the evidence to her RFC conclusions regarding Claimant's ability to carry weight and follow instructions, which frustrates meaningful review. Therefore, the RFC assessment is not supported by substantial evidence.

Finding that the ALJ failed to properly explain the RFC finding, the Court considers whether the ALJ's errors could be considered harmless. As a general proposition, the Fourth Circuit and its district courts apply the harmless error doctrine in reviewing a decision of the Commissioner denying a claim for benefits. *Keller v. Berryhill*, 754 Fed. Appx. 193, 199 (4th Cir. 2018). An ALJ's error is harmless when it is clear upon the record that it did not affect the ultimate disability determination. *Camp v. Massanari*, 22 Fed. Appx. 311 (4th Cir. 2001). For instance, if there is at least one job that the ALJ properly relied upon at step five of the sequential evaluation that Claimant could perform notwithstanding the RFC restriction that the ALJ omitted, the ALJ's error is harmless. *See, e.g., Bradley v. Colvin*, No. 2:14-CV-23774, 2015 WL 5725832, at *5 (S.D.W. Va. Sept. 30, 2015); *Jude v. Kijakazi,* No. CV 1:21-00010, 2022 WL 4594501, at *4 (S.D.W. Va. Sept. 30, 2022); *Farnsworth v. Astrue,* 604 F. Supp. 2d 828, 837 (N.D.W. Va. 2009); *Richardson v. Berryhill*, No. 517CV00173RJCDSC, 2019 WL 1354042, at *4 (W.D.N.C. Mar. 26, 2019).

In this case, the ALJ's failure to analyze Claimant's ability to follow one to two step instructions is harmless because one of the jobs that the ALJ found that Claimant could

perform requires a reasoning level of 1, which is defined as applying "commonsense understanding to carry out simple one- or two-step instructions." (Tr. at 30); Dowel Inspector, DOT 669.687-014, 1991 WL 686074. Therefore, even if the ALJ included that restriction, it would not have changed the determination that Claimant could work as a dowel inspector. Claimant seems to generally agree with the contention that the ALJ's error regarding his mental impairments could be considered non-prejudicial. (ECF No. 13 at 11 n.12).

However, as Claimant noted, the ALJ also failed to explain her assessment of Claimant's physical RFC, which potentially affected the outcome of the decision. The ALJ found that Claimant could perform light exertional work that included lifting and carrying 20 pounds occasionally and 10 pounds frequently. (Tr. at 23). She did not reconcile Dr. Buckwalter's conflicting opinion that Claimant could only carry up to 10 pounds occasionally and never carry 10 pounds or more with the hand that he was not using for his cane, although she found the opinion persuasive and Claimant's ability to carry weight was outcome-determinative. Light exertional work, by definition, involves frequently carrying objects up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). Dr. Buckwalter's restriction to occasional carrying of objects up to 10 pounds with the non-cane bearing hand is inconsistent with the ALJ's determination that Claimant could perform light work, including occasionally carrying 20 pounds. As Claimant noted, if the ALJ had instead restricted him to sedentary work, he likely would have been automatically deemed disabled under the Grid Rules when he turned 50 several months before the ALJ's decision. (ECF No. 13 at 8).

The Medical-Vocational Guidelines ("Grid Rules") provide a framework for finding disability based on levels of exertion and vocational criteria such as age, education, and

previous work experience. Pursuant to Grid Rule 201.10, a claimant is adjudged "disabled" if he or she qualifies as a "person closely approaching advanced age" (age 50 to 54), has an education classified as "'limited or less" (the SSA considers a 7th grade through 11th grade level of formal education to be a "limited education" per 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3)), and whose previous work experience is classified as unskilled or none, or skilled or semiskilled but the skills are not transferable." *Miller v. Saul*, No. 3:20-CV-00352, 2021 WL 1603613, at *19 (S.D.W. Va. Apr. 7, 2021), *report and recommendation adopted,* 2021 WL 1601749 (S.D.W. Va. Apr. 23, 2021). Claimant met the age and education criteria during the relevant period, but the ALJ never determined whether Claimant had skills that transferred to sedentary jobs because she found him capable of light exertion work. (Tr. at 29). In other words, the ALJ circumvented Grid Rule 201.10 by finding that Claimant could perform less than a full range of light work.

One might argue that the ALJ's failure to include Dr. Buckwalter's carrying restriction, or explore Claimant's ability to carry in more detail, was inconsequential because the ALJ determined based on the VE's testimony that Claimant could perform sedentary jobs which were consistent with occasionally carrying objects up to 10 pounds. However, as noted, if Claimant was actually limited to sedentary work, the Grid Rules directed that Claimant was disabled at age 50 if he did not have any transferable skills. Notably, the prior ALJ found that Claimant did not have transferable skills. (Tr. at 101). If the ALJ made the same finding in this case that Claimant was limited to sedentary work without transferable skills, it would have resulted in a finding of disability because Claimant is now "a person closely approaching advanced age." Therefore, it was crucial that the ALJ explained her reasoning for assessing the exertional level of Claimant's RFC. The ALJ's failure to reconcile an obvious evidentiary inconsistency in the amount that

Claimant was able to carry—which was a "potentially dispositive issue"—constituted "an error of law that necessitates remand." *Woody v. Kijakazi,* No. 22-1437, 2023 WL 5745359, at *1 (4th Cir. Sept. 6, 2023).

As Claimant suggests, if his RFC fell between the range of light and sedentary work, triggering a "between the ranges" analysis, the ALJ should have solicited VE testimony to determine the erosive effect of Claimant's limitations on light exertional level work and if there were jobs that he could perform with these particular deficits in mind. 20 C.F.R. § Pt. 404, Subpt. P, App. 2, § 200.00(d); *see also* SSR 83-12, 1983 WL 31253, at *2 (S.S.A. 1983) ("Where an individual's exertional RFC does not coincide with the definition of any one of the ranges of work as defined in sections 404.1567 and 416.967 of the regulations, the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. The adjudicator will consider the extent of any erosion of the occupational base and access its significance. … Where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource."). The ALJ, in this case, utilized a VE, but the ALJ did not proffer a hypothetical that included the carrying restriction expressed by Dr. Buckwalter. Because the ALJ did not explain why she excluded that limitation and assessed that Claimant could carry 20 pounds occasionally, it is not possible to determine whether the hypothetical fairly reflected all of Claimant's physical limitations and whether the ALJ's reliance on the VE's testimony is supported by substantial evidence. "[A]n administrative law judge can rely on the answer to a hypothetical question so long as the question 'adequately reflect[s]' a residual functional capacity that is supported by sufficient evidence." *Britt v. Saul*, 860 Fed. Appx. 256, 263 (4th Cir. 2021) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005)).

For those reasons, the undersigned **FINDS** that the ALJ's RFC analysis is not supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and that this case be **REMANDED** so that the ALJ may reexamine or elaborate upon her analysis of Claimant's RFC.

### B. Subjective Symptoms

Claimant argues that the ALJ's credibility assessment is deficient because of the foregoing flaws in the RFC analysis and the ALJ's failure to consider his virtually uninterrupted 27-year work history. (ECF No. 13 at 11). Under the applicable Social Security rulings and regulations, an ALJ is obliged to use a two-step process when evaluating the credibility of a claimant's subjective statements regarding the effects of his or her symptoms. 20 C.F.R. §§ 404.1529, 416.929 (effective to decisions on or after March 27, 2017). First, the ALJ must consider whether the claimant's medically determinable medical and psychological conditions could reasonably be expected to produce the claimant's symptoms, including pain. *Id.* §§ 404.1529(a), 416.929(a). In other words, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *2 (effective to decisions on or after March 28, 2016). Instead, evidence of objective "[m]edical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques" must be present in the record and must demonstrate "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(b), 416.929(b).

Second, after establishing that the claimant's conditions could be expected to produce the alleged symptoms, the ALJ must evaluate the intensity, persistence, and

severity of the symptoms to determine the extent to which they prevent the claimant from performing basic work activities. *Id.* §§ 404.1529(a), 416.929(a). If the intensity, persistence, or severity of the symptoms cannot be established by objective medical evidence, the ALJ must consider "other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms," including a claimant's own statements. SSR 16-3p, 2017 WL 5180304, at *5-*6. In evaluating a claimant's statements regarding his or her symptoms, the ALJ must consider "all of the relevant evidence," including: the claimant's history; objective medical findings obtained from medically acceptable clinical and laboratory diagnostic techniques; statements from the claimant, treating sources, and non-treating sources; and any other evidence relevant to the claimant's symptoms, such as, evidence of the claimant's daily activities, specific descriptions of symptoms (location, duration, frequency and intensity), precipitating and aggravating factors, medication or medical treatment and resulting side effects received to alleviate symptoms, and other factors relating to functional limitations and restrictions due to the claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); *see also Craig*, 76 F.3d at 595; SSR 16-3p, 2017 WL 5180304, at *4-*7.

SSR 16-3p provides further instruction on what type of evidence should be considered when the intensity, persistence, or severity of the symptoms cannot be established by objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *6. The ruling presents an extensive list of evidence that may prove probative and notes that valuable evidence to consider may include (1) a longitudinal record of any treatment and its success or failure, including any side effects of medication and (2) indications of other impairments, such as potential mental impairments, that could account for an individual's allegations. *Id.*

22

In *Hines v. Barnhart*, the Fourth Circuit stated that:

> Although a claimant's allegations about her pain may not be discredited
> solely because they are not substantiated by objective evidence of the pain
> itself or its severity, they need not be accepted to the extent they are
> inconsistent with the available evidence, including objective evidence of the
> underlying impairment, and the extent to which that impairment can
> reasonably be expected to cause the pain the claimant alleges she suffers.

453 F.3d at 565 n.3 (citing *Craig*, 76 F.3d at 595). The ALJ may not reject a claimant's

allegations of intensity and persistence solely because the available objective medical

evidence does not substantiate the allegations; however, the lack of objective medical

evidence may be one factor considered by the ALJ. SSR 16-3p, 2017 WL 5180304, at *5.

Ultimately, "it is not sufficient for [an ALJ] to make a single, conclusory statement

that 'the individual's statements about his or her symptoms have been considered' or that

'the statements about the individual's symptoms are (or are not) supported or consistent.'

It is also not enough for [an ALJ] simply to recite the factors described in the regulations

for evaluating symptoms. The determination or decision must contain specific reasons for

the weight given to the individual's symptoms, be consistent with and supported by the

evidence, and be clearly articulated so the individual and any subsequent reviewer can

assess how the [ALJ] evaluated the individual's symptoms." *Id.* at *10. SSR 16-3p instructs

that "[t]he focus of the evaluation of an individual's symptoms should not be to determine

whether he or she is a truthful person;" rather, the core of an ALJ's inquiry is "whether

the evidence establishes a medically determinable impairment that could reasonably be

expected to produce the individual's symptoms and given the adjudicator's evaluation of

the individual's symptoms, whether the intensity and persistence of the symptoms limit

the individual's ability to perform work-related activities." *Id.* at *11.

When considering whether an ALJ's evaluation of a claimant's reported symptoms

is supported by substantial evidence, the Court does not replace its own assessment for that of the ALJ; rather, the Court scrutinizes the evidence to determine if it is sufficient to support the ALJ's conclusions. In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence, reach independent determinations as to the weight to be afforded to a claimant's report of symptoms, or substitute its own judgment for that of the Commissioner. *Hays*, 907 F.2d at 1456. Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

In this case, the ALJ performed the two-step process. The fact that the ALJ did not specifically mention Claimant's "stellar work history" in itself does not warrant remand of the ALJ's decision in this case. Claimant's work history was well documented in the record, including in the work history, earnings, disability, and consultative examiners' reports and the hearing testimony. (Tr. at 80, 421-23, 500, 542, 685, 698). Claimant does not identify any authority which required the ALJ to elaborate any further on her analysis of Claimant's work history.

However, the subjective symptom analysis is deficient because the ALJ did not properly analyze the opinions and prior administrative findings, as specified above. The evidence that Claimant was limited to one to two step tasks and occasionally carrying up to 10 pounds ostensibly supported Claimant's subjective complaints, but there is no indication that the ALJ properly evaluated those opinions. Therefore, the undersigned **FINDS** that the ALJ's subjective symptom analysis is not supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED,** and the case be **REMANDED** for the

24

additional reason so that the ALJ may reexamine or elaborate upon the subjective symptom analysis of Claimant's mental and physical impairments.

## VIII.  **Recommendations for Disposition**

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's request for judgment on the pleadings, (ECF No. 13), to the extent that it requests remand of the Commissioner's decision; **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 14); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989);

*Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Copenhaver, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** September 12, 2023

Cheryl A. Eifert
United States Magistrate Judge

26